United States District Court
Southern District of Texas
**ENTERED**
July 16, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES LOGAN DIEZ, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | CIVIL ACTION NO. 2:24-CV-00063 |
| | § | |
| JANE DOE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Before the Court is Magistrate Judge Jason Libby's Memorandum and Recommendation ("M&R"). (D.E. 10). The M&R recommends that the Court dismiss with prejudice Plaintiff's case for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff filed written objections to the M&R, (D.E. 14; D.E. 15; D.E. 16), as well as filings regarding events that occurred after the *Spears* hearing on Plaintiff's initial claims, (D.E. 17; D.E. 18; D.E. 20; D.E. 24). Plaintiff subsequently filed a motion to transfer this case and consolidate it with his voting rights case currently before Judge Ramos.[1] (D.E. 25).

In response to a party's objections to the findings and recommendations of a magistrate judge, a district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Regardless of objection, a district court reviews the M&R for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

---

[1] Plaintiff incorrectly identifies the case pending before Judge Ramos as No. 2:24-CV-00269. (D.E. 25, p. 2). The correct case is No. 2:24-CV-00295.

## I. Procedural

Judge Libby previously entered an M&R recommending dismissal of Plaintiff's case. (D.E. 10). After that, Plaintiff filed three responses to the M&R titled "objections to M&R," (D.E. 14), "memorandum of law," (D.E. 15), and "memorandum notice," (D.E. 16). Approximately two weeks after the last of these responses and over six weeks after the filing of the M&R, Plaintiff also filed a "motion to enjoin additional defendants," (D.E. 17), and "memorandum/update on events," (D.E. 18), for actions occurring after his initial objections to the M&R. The motion to enjoin additional defendants was denied without prejudice for failure to exhaust administrative remedies relating to facts that occurred after the filing of the initial action. (D.E. 19, p. 3). Plaintiff replied by filing an objection, (D.E. 20), which was denied, (D.E. 23), as well as a "memorandum of law" regarding the inapplicability of administrative remedies, (D.E. 24). Plaintiff later filed a motion to transfer this case and consolidate it with case No. 2:24-CV-00295, involving other alleged violations of Plaintiff's voting rights by TDCJ officials. (D.E. 25); *see also Diez v. Mr. Schneider et al.*, 2:24-CV-00295 (S.D. Tex. 2024) (Ramos, J).

Generally, trial courts should "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a). However, in determining when to grant such leave, the Fifth Circuit instructs that "futility of the amendment" is a sufficient factor for a district court to deny leave to amend. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). In this case, Plaintiff's later filings include "new claims against new defendants" stemming from the handling of voting documents by TDCJ officials after the *Spears* hearing and M&R filing. (D.E. 23, p. 2); *see also* (D.E. 16). The M&R recommends dismissal of Plaintiff's original claims as the "lack of assistance received from the defendants does not amount to a violation of any constitutional or statutory right." (D.E. 10, p. 11). However, in contrast to the unhelpfulness of TDCJ officials alleged in Plaintiff's initial pleadings,

his subsequent allegations detail specific actions by TDCJ's officials that "may state a plausible claim for election interference." (D.E. 19, p. 2). Regardless, "all inmate suits about prison life" require the exhaustion of administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

As Plaintiff has not exhausted administrative remedies for his initial claims, allowing him to amend his claim would be futile. (D.E. 10, p. 13; D.E. 19, p. 3). Also, allowing amendment may preclude Plaintiff from pursuing remedies for any potentially meritorious claims through the proper administrative channels. Accordingly, the Court will limit its review to Plaintiff's objections raised in D.E. 14, as these objections pertain to his initially pled claims.

## II. Objections

Plaintiff makes four objections to the M&R. First, Plaintiff asserts he lacked access to the Texas election code until May 18th, 2023, when he was issued a tablet with electronic access. (D.E. 14, p. 1–2). Plaintiff alleges that this prevented him from gathering the information necessary to request an absentee ballot in both the 2022 and 2023 elections.[2] *Id.* Second, Plaintiff argues that the law librarian had a "duty to provide" the address of the voting clerk when Plaintiff inquired how to vote from his unit. (D.E. 14, p. 3). Third, Plaintiff alleges the failure to provide this address was a violation of 52 U.S.C. § 10307(a). *Id.* at 4. Plaintiff also asserts that, as an elderly voter, he is entitled to "an actual ballot/access to a poll" under 52 U.S.C. § 20102(b)(2)(B)(ii). *Id.* at 5. Fourth, and finally, Plaintiff asserts his failure to file a grievance does not bar his claim, as he was told by the grievance office that "grievances don't apply" to voting issues. *Id.* at 6.

---

[2] The Court notes that Plaintiff appears to have not requested the desired voting documents until after his *Spears* hearing on April 10, 2024, (D.E. 16, p. 1), and not upon allegedly gaining accessing the Texas Election Code on May 18th, 2023.

Plaintiff's pleadings include sufficient facts to establish his plausible right to vote. At the time of his claims, Plaintiff's 2022 felony conviction was on direct appeal, and his prior convictions from the 1980s had been fully discharged. (D.E. 10, p. 7–8). Accordingly, Plaintiff was a "qualified voter" under the Texas Election Code (Tex. Elec. Code Ann. § 11.01) and not excluded from voting by the Texas Constitution (Tex. Const., art. VI, § 1 (a)(3)).

It is clear from the pleadings that Plaintiff repeatedly requested information from numerous TDCJ officials regarding how to vote from the McConnell Unit. (D.E. 1, p. 5; D.E. 2, p. 4–6). However, the TDCJ-CID Offender Orientation Handbook instructs inmates to contact the Texas Secretary of State or the appropriate county voting officials for information on how to vote. TEXAS DEP'T OF CRIM. JUST., OFFENDER ORIENTATION HANDBOOK, I-202, p. 69–70 (February 2017).[3] TDCJ officials themselves are not required to provide inmates with information on how to vote or access to the Texas Election Code. *See id.* Rather, the burden is on the inmate to find or specifically request the necessary addresses, contact the appropriate voting officials, and complete the voter application process.

Thus, while the Court appreciates that Plaintiff made numerous requests for information regarding how to vote from the McConnell Unit and filed multiple I-60 forms, (D.E. 2, p. 1–2); (D.E. 11, p. 23), a lack of response to these general requests does not represent a deprivation of Plaintiff's constitutional rights. Plaintiff has not alleged in his pleadings or during his *Spears* hearing that he specifically requested the "address of any voting official or that such a request was denied." (D.E. 10, p. 12); *see also* (D.E. 2). Thus, Plaintiff alleges no facts in his complaint

---

[3] Plaintiff quoted this version of the offender handbook in his pleadings and noted that this contact information is purported to be available in the unit's law library. (D.E. 2, p. 2).

demonstrating that Defendants' unhelpfulness did not follow TDCJ procedures or deprived Plaintiff of his rights.[4]

Therefore, Plaintiff's first and second objections regarding lack of access to the Texas election code and any broad duty by TDCJ officials to help him vote are without merit. Accordingly, Plaintiff's third objection that the alleged lack of assistance is a violation of 52 U.S.C. § 10307(a) is unfounded. As Plaintiff did not follow TDCJ's voting policy to request an absentee ballot, there is no evidence that Plaintiff's status as an elderly voter would require an "alternative means for casting a ballot on the day of the election," 52 U.S.C. § 20102(b)(2)(B)(ii), or that any Defendant interfered with Plaintiff being provided an alternative means.[5] The Court need not reach Plaintiff's fourth objection regarding the prison grievance process, as Plaintiff has not pled a plausible claim that Defendants deprived him of his voting rights, and Plaintiff's claims are dismissed on those grounds. As the Court adopts Judge Libby's M&R over Plaintiff's objections, the motion to consolidate, (D.E. 25), is moot.

### III. Subsequent Filings

The Court notes that, while Plaintiff's original pleadings fail to state a constitutional claim in this case, Plaintiff's subsequent allegations regarding events after his *Spears* hearing may plausibly state a claim for a violation of Plaintiff's constitutional rights. After the *Spears* hearing, Plaintiff asserts he followed the procedures to request a mail-in ballot and received an updated voter registration card from the Burnett County Election Office. (D.E. 16, p. 1). Plaintiff alleges that a TDCJ mail unit employee, Officer Schneider, denied Plaintiff subsequent mail addressed to

---

[4] The Court notes that Plaintiff successfully requested the requisite voter registration card and absentee form once he was provided with the necessary addresses by Judge Libby at the Spears hearing. (D.E. 10, p. 4); (D.E. 16, p. 1).

[5] No official form is required to request an application by mail from the voting clerk for an early voting ballot. Tex. Elec. Code Ann. § 84.001(c).

him containing "some kind of voting form" and told Plaintiff that he couldn't vote because he was a "prisoner." (D.E. 16, p. 1–2; D.E. 17, p. 2–3). Plaintiff asserts he submitted a memo explaining the situation to the McConnell Unit Head Warden. (D.E. 17, p. 3–4). Plaintiff alleges he requested the mailed voting form from Officer Schneider multiple times, who informed him on June 13th, 2024, that he would not be providing the form "because it's already been decided you're not going to vote." (D.E. 18, p. 1).

This alleged denial of a properly requested voting form is strikingly different from Plaintiff's original claims. Following the *Spears* hearing in this case, Plaintiff contacted the appropriate county voting officials, successfully secured a renewed voter registration card, and initiated the application process for an absentee ballot in compliance with TDCJ's policy. However, in contrast to the mere unhelpfulness of TDCJ officials asserted in Plaintiff's original claims, the alleged specific refusal by Officer Schneider to provide Plaintiff with a voting form may state a plausible claim for election interference. Indeed, Plaintiff's case pending before Judge Ramos—on those allegations—has survived the screening stage. *Diez v. Schnieder, et al.*, No. 2:24-CV-00295 (S.D. Tex. 2025) (Ramos, J.). As a result, Judge Ramos will address the merits of that case.

However, given that both cases address Plaintiff's voting rights, the Court uses its "broad discretion" to consider *sua sponte* consolidating the cases under Federal Rule of Civil Procedure 42. *In re Enron Corp. Sec.*, No. CIV.A. H-01-3624, 2007 WL 446051, at *1 (S.D. Tex. Feb. 7, 2007) (Harmon, J.).

In determining whether to consolidate two cases, the Court considers

> (1) whether the actions are pending before the same court, (2) whether common parties are involved in this case, (3) whether there are common questions of law and/or fact, (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources.

*Zolezzi v. Celadon Trucking Servs. Inc.*, No. H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (Harmon, J.) (citations omitted). While the two cases are pending before the Southern District of Texas, each case involves different defendants and different questions of law.[6] Given these differences, the Court has determined that it will not conserve judicial resources to consolidate the cases. Accordingly, while the Court notes that both cases deal with Plaintiff's voting rights, the Court declines to consolidate the cases.

As a concluding aside, TDCJ is encouraged to ensure that its policies support the voting rights of eligible voters in Texas prisons. Considering the time-sensitive nature of voting, administrative grievance processes and legal remedies may be ineffective in addressing issues before potentially unconstitutional deprivations occur.[7] Accordingly, the Court expects that the TDCJ-CID Offender Orientation Handbook provides inmates and TDCJ staff with information that facilitates an understanding of the rights of incarcerated eligible voters under the Texas Constitution and the Texas Election Code. The Court approvingly notes the approach Plaintiff describes experiencing in a different TDCJ unit, which proactively addressed the voting rights of eligible inmates. (D.E. 6, p. 1–2); (D.E. 11, p. 36–37). TDCJ is reminded that the right to vote is "fundamental, and alleged disfranchisement of even a small group of potential voters is not to be taken lightly." *O'Brien v. Skinner*, 409 U.S. 1240, 1241-42 (1972). Any deprivation of access for

---

[6] Specifically, the case before Judge Ramos includes the following defendants: Mr. Schneider, Director's Review Committee, Texas Board of Criminal Justice, and TDCJ Director Bobby Lumpkin (with the Office of the Attorney General appearing as Amicus Curiae). By contrast, the defendants in this case include Jane Doe Law Library Supervisor, Warden Jerry Sanchez, Elbert Holmes, and Unknown Defendants. And as the Court detailed above, this case deals with the general duty by TDCJ officials to help Plaintiff vote, whereas the case pending before Judge Ramos deals with specific actions that TDCJ officials did to allegedly interfere with Plaintiff's right to vote.

[7] *See* Dana Paikowsky, *Jails as Polling Places: Living Up to the Obligation to Enfranchise the Voters We Jail*, 54 HARVARD CIVIL RIGHTS-CIVIL LIBERTIES LAW REVIEW 829 (Summer 2019).

eligible incarcerated voters to alternative means of voting is "tantamount to deprivation of the [voting] franchise itself, and it is axiomatic that courts must 'strictly scrutinize' that discriminatory withdrawal of voting rights." *O'Brien*, 409 U.S. at 1241 (citation omitted).

## IV. Conclusion

Having reviewed the proposed findings and conclusions of the M&R, the record, the applicable law, and having made a de novo review of the portions of the M&R to which Plaintiff's objections are directed, 28 U.S.C. § 636(b)(1)(C), the Court **OVERRULES** Plaintiff's objections, (D.E. 14), and **ADOPTS** the findings and conclusions of the M&R, (D.E. 10). Accordingly, Plaintiff's motion to consolidate, (D.E. 25), is **DENIED as moot**. Finally, the Court **ORDERS** the Clerk of Court to send a copy of this Order to Plaintiff at his most current address, as well as to the Texas Department of Criminal Justice.

SO ORDERED.

_____
DAVID S. MORALES
UNITED STATES DISTRICT JUDGE

Signed: Corpus Christi, Texas
July 15, 2025